UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | NO. 4:20CR00571 RWS |
| v. | ) | |
| | ) | |
| MAKENZIE WILLARD, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## GUILTY-PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

## 1.    PARTIES:

The parties are the defendant **MAKENZIE WILLARD**, represented by defense counsel

**TERENCE NIEHOFF**, and the United States of America (hereinafter "United States" or

"Government"), represented by the Office of the United States Attorney for the Eastern District of

Missouri. This agreement does not, and is not intended to, bind any governmental office or agency

other than the United States Attorney for the Eastern District of Missouri. The Court is neither a

party to nor bound by this agreement.

## 2.    GUILTY PLEA:

**A.    The Plea:**    Pursuant to Rule 11(c)(1)(A), of the Federal Rules of Criminal

Procedure, in exchange for the defendant's voluntary plea of guilty to Counts Two, Three, Five,

and Six of the Indictment, the United States agrees to move for the dismissal as to the defendant

of Counts Four and Seven at the time of sentencing. Moreover, the United States agrees that no

Page **1** of **21**

further federal prosecution will be brought in this District relative to the defendant's violations of federal law, known to the United States at this time, arising out of the events set forth in the Indictment.

**B.** **The Sentence:** The parties agree that the recommendations contained herein fairly and accurately set forth some guidelines that may be applicable to this case. In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request. The parties understand that the Court is neither a party to nor bound by the Guidelines recommendations agreed to in this document.

**3.** **ELEMENTS:**

As to Count Two, the defendant admits to knowingly violating Title 18, United States Code, Section 922(g)(1), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are as follows:

**(i)** The defendant had been convicted of a crime punishable by imprisonment for a term exceeding one year;

**(ii)** The defendant, thereafter, knowingly possessed a firearm;

**(iii)** At the time the defendant knowingly possessed a firearm, she knew she had been

convicted of a crime punishable by imprisonment for more than one year; and

**(iv)** The firearm was transported across a state line at some point during or before the defendant's possession of it.

As to Count Three, the defendant admits to knowingly violating Title 21, United States Code, Section 841(a)(1) and admits there is a factual basis for the plea and further fully understands that the elements of the crime of Possession with Intent to Distribute Fentanyl, and/or Methamphetamine, are:

**(i)** The defendant was in possession of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, commonly known as fentanyl, a Schedule II controlled substance drug and/or methamphetamine, a Schedule II controlled substance drug;

**(ii)** The defendant knew that she was in possession of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, commonly known as fentanyl, a Schedule II controlled substance, and/or methamphetamine, a Schedule II controlled substance; and

**(iii)** The defendant intended to distribute some or all of the N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, commonly known as fentanyl, and/or methamphetamine, to another person.

As to Count Five, the defendant admits to knowingly violating Title 18, United States Code, Section 922(g)(1), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are as follows:

**(i)** The defendant had been convicted of a crime punishable by imprisonment for a term exceeding one year;

**(ii)** The defendant, thereafter, knowingly possessed a firearm;

**(iii)** At the time the defendant knowingly possessed a firearm, she knew she had been convicted of a crime punishable by imprisonment for more than one year; and

**(iv)** The firearm was transported across a state line at some point during or before the defendant's possession of it.

As to Count Six, the defendant admits to knowingly violating Title 21, United States Code, Section 841(a)(1) and admits there is a factual basis for the plea and further fully understands that the elements of the crime of Possession with Intent to Distribute Fentanyl and/or a Mixture of Heroin and Fentanyl, are:

**(i)** The defendant was in possession of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, commonly known as fentanyl, a Schedule II controlled substance drug and a mixture containing a detectable amount of heroin and N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, commonly known as fentanyl, both Schedule II controlled substance drugs;

**(ii)** The defendant knew that she was in possession of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, commonly known as fentanyl, a Schedule II controlled substance, and a mixture containing a detectable amount of heroin and N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, commonly known as fentanyl, both Schedule II controlled substances; and

**(iii)** The defendant intended to distribute some or all of the N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, commonly known as fentanyl, and a mixture containing a detectable amount of heroin and N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, commonly known as fentanyl, both Schedule II controlled substances, to another person.

**4.     FACTS:**

The parties agree that the facts in this case are as follows and that the United States would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

## JANUARY 7, 2020 INCIDENT

On January 7, 2020, St. Louis Metropolitan Police Department ("SLMPD") officers initiated a traffic stop on a vehicle for expired tags at the intersection of Oak Hill Avenue and Wyoming Street, in the City of Saint Louis, within the Eastern District of Missouri. Officers made contact with the driver, co-defendant Darryl Lanza, and the defendant, who as the passenger. Officers learned that the defendant had an active felony warrant from St. Louis County and was also a convicted felon. Upon returning to the vehicle, the officers asked if there were any weapons in the vehicle, to which the defendant replied that she had a gun in the bag on the floorboard. One of the officers located a firearm in the vehicle and the defendant then informed him that there was another firearm in the bed of the truck. The officers located the second firearm and rendered it safe as well. The defendant was advised of her *Miranda* rights and stated that the guns belonged to a friend of hers and she was on her way to return them to him.

The vehicle was searched and officers located a black Michael Kors purse on the floorboard of the driver's side. Inside the bag were three small clear baggies with a crystal substance, as well as several clear capsules filled with a white powdery substance, and U.S. currency. Underneath the driver's seat, officers located a small gold zippered bag that contained three unused syringes, two clear baggies containing blue and red tablets, a clear baggie containing a white powdery substance, two large clear baggies containing numerous small clear baggies, and a small metal spoon. Additionally, officers located a cardboard box on the passenger side floorboard that

Page **5** of **21**

contained fourteen glass/silicone pipes, some with residue, a small digital scale, and a butane torch. Officers further located three cell phones in the vehicle. When asked, the defendant admitted the purse and two of the phones belonged to her, but denied knowledge of the gold zippered bag. Co-defendant Lanza was asked about the suspected narcotics located under the driver's seat and he stated that the defendant was his dealer, that he had just purchased an ounce of methamphetamine from her at the storage facility, and that he agreed to give her a ride to her AirBNB.

While in the patrol car, the defendant was observed stomping her feet on the floorboard of the vehicle. When officers removed her from the vehicle, a small capsule fell out of her left sweatshirt pocket and officers saw two smashed capsules with white powder on the floorboard, as well as a white powder on the seat where she had been located. The officer had checked for contraband prior to placing the defendant in the vehicle and had not observed anything unusual. The capsule that fell was seized as evidence. A total of $1,103 was seized from the defendant, who claimed it was money she won at the casino.

The suspected narcotics and the firearms were sent to the SLMPD Crime Lab. The controlled substances attributable to the defendant were determined to be, in pertinent part, 2.57 grams of psilocybin, 0.24 grams of fentanyl, and 20.94 grams of methamphetamine.

The firearms were evaluated and determined to be 1) a Sturm, Ruger & Co. Inc. make, LCP Series model, .380 Auto caliber, semi-automatic pistol bearing serial number 372-98106; and 2) a Taurus make, P& 840 C model, .40 S&W caliber, semi-automatic pistol bearing serial number SEU02164. The firearm was not manufactured in Missouri and, therefore, necessarily traveled in interstate or foreign commerce in order to be in the defendant's possession on January 7, 2020.

Prior to January 7, 2020, the defendant had at least one prior felony conviction which was

punishable by a term of imprisonment exceeding one year under the laws of the State of Missouri. At the time the defendant possessed the aforementioned firearm, she knew she had been convicted of a crime punishable by a term of imprisonment exceeding one year.

## MARCH 29, 2020 INCIDENT

On March 29, 2020, an SLMPD officer observed two vehicles turn right from Osceola onto South Grand, and speed away and extremely high speeds while disobeying traffic signals. The officer attempted to follow them and eventually discovered the vehicles near Carondelet Park at the intersection of Grand and Holly Hills, in the City of St. Louis, within the Eastern District of Missouri. An off-duty officer was already on scene and had his firearm drawn on a black male and white female. The officer was ordering the male to drop his firearms and for both individuals to get on the ground. The original officer exited his vehicle and assisted the off-duty officer with detaining both individuals. The male was identified as A.P. and the female was identified as the defendant. Both were advised of their *Miranda* rights.

The officer seized both of A.P.'s handguns. He also located a firearm in plain view in the defendant's purse. The defendant admitted the firearm was hers. Dispatch confirmed that the defendant's firearm was stolen.

A.P. stated that he was sideswiped by the defendant but she did not stop, so he pursued her to get her plate information. He stated that he lost control of his vehicle and crashed near Carondelet Park, saw that the other vehicle also crashed, so he went to confront the driver. He stated that when he opened the door, he saw the defendant reach for a gun in her waistband, so he pointed his gun at her and pulled her out of the car.

The defendant admitted to police that she sideswiped A.P.'s vehicle, but stated that she

stopped to speak with him, he was holding a gun, so she fled. She stated that she crashed her car near Carondelet Park and that A.P. pulled her out of her vehicle while he was holding a handgun.

A witness (T.H.) stated that he saw both vehicles crash and A.P. get out of his vehicle with a gun in his hand. He stated that A.P. stated to the defendant, "Don't move bitch or I'll kill your ass" and then pulled her from the vehicle at gunpoint. The off-duty officer indicated that he observed A.P.'s vehicle strike the defendant's vehicle before both vehicles crashed. He stated that he saw A.P. get out of his vehicle holding two handguns and forcefully remove the defendant from the vehicle before he was able to intervene.

The defendant had active warrants and officers performed an inventory search of her vehicle. During the search, officers located a clear capsule filled with an off-white powder and a black and blue capsule on the driver's seat. In the driver side door, officers located a glass pipe with residue. On the center console, officers found an orange Crown Royal bag with a small clear baggie with a devil face containing an off-white powder, six clear capsules containing a white powder, another glass pipe with residue, a 9mm bullet, and several small shards of clear rocks. Inside the center console, officers located a small vial containing a white powder and a box filled with empty clear plastic baggies. Officers also located a digital scale on the passenger seat and $2,009.00 in U.S. currency in the glove box.

The suspected narcotics and the firearms were sent to the SLMPD Crime Lab. The controlled substances were determined to be, in pertinent part, 1.52 grams of fentanyl and 2.88 grams of a mixture of heroin and fentanyl.

The defendant's firearm was evaluated and determined to be a Smith & Wesson make, M&P 9 Pro Series model, .9mm Luger caliber, semi-automatic pistol bearing serial number

HYT1374. The firearm was not manufactured in Missouri and, therefore, necessarily traveled in interstate or foreign commerce in order to be in the defendant's possession on March 29, 2020.

Prior to March 29, 2020, the defendant had at least one prior felony conviction which was punishable by a term of imprisonment exceeding one year under the laws of the State of Missouri. At the time the defendant possessed the aforementioned firearm, she knew she had been convicted of a crime punishable by a term of imprisonment exceeding one year.

The amounts of controlled substances attributable to the defendant are not subject to precise calculation. Based upon the information gathered during the investigation, including the seizures and relevant conduct, the parties agree that the readily provable amount of methamphetamine, attributable to the defendant, is at least 20 grams but less than 30 grams of methamphetamine; that the readily provable amount of fentanyl is not more than 4 grams of fentanyl; that the readily provable amount of heroin is less than 10 grams of heroin; and that the readily provable amount of psilocybin is 2.57 grams. The evidence seized and analyzed would demonstrate that methamphetamine is a Schedule II controlled substance; that fentanyl is a Schedule II controlled substance; that heroin is a Schedule I controlled substance; and that psilocybin is a Schedule I controlled substance. Expert testimony in the event of trial would establish that this amount of methamphetamine, fentanyl, heroin, and psilocybin are consistent with amounts possessed for distribution.

## 5.   **STATUTORY PENALTIES:**

The defendant fully understands that the maximum possible penalty provided by law for the crime in Counts Two and Five of the Indictment, to which the defendant is pleading guilty, is imprisonment of not more than ten years, a fine of not more than \$250,000, or both such

imprisonment and fine. The Court also may impose a period of supervised release of not more than three years.

The defendant fully understands that the maximum possible penalty provided by law for the crime in Counts Three and Six of the Indictment, to which the defendant is pleading guilty, is imprisonment of not more than twenty years, a fine of not more than $1,000,000, or both such imprisonment and fine. The Court shall also impose a period of supervised release of at least three years.

In certain situations under Title 18, United States Code, Section 924(e)(Armed Career Criminal), the defendant may be subject to a mandatory minimum sentence of imprisonment of fifteen (15) years and a maximum of life, a fine of not more than $250,000, or both such imprisonment and fine, and a term of supervised release of not more than five years. The defendant is pleading guilty with full knowledge of these possibilities, has discussed these possibilities with counsel and will not be able to withdraw the guilty plea if the Court determines the foregoing statute applies to the defendant's sentence.

## 6. U.S. SENTENCING GUIDELINES: 2021 MANUAL

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply.

### COUNTS TWO AND FOUR

### FELON IN POSSESSION OF A FIREARM

**A.    Chapter 2 Offense Conduct:**

      **i.**     **Base Offense Level:**  The parties agree that the Base Offense Level for Counts Two and Five are found in Section 2K2.1(a), and depends on, among other things, the nature of the defendant's criminal history and the characteristics of the firearm.  The Base Offense Level may also be determined under Section 4B1.4 if the defendant is determined to be an Armed Career Criminal.

      **ii.**     **Specific Offense Characteristics:**  The parties agree that the following Specific Offense Characteristics apply:

     Under Section 2K2.1(b)(1)(a), **two** (2) levels shall be added because the defendant possessed three or more firearms;

     Under Section 2K2.1(b)(4)(A), **two** (2) levels shall be added because the defendant possessed a stolen firearm.

     Under Section 2K2.1(b)(6)(B), **four** (4) levels shall be added because "the defendant possessed [a] firearm [] in connection with another felony offense."

     **B.**    **Chapter 3 Adjustments:**

      **i.**    **Acceptance of Responsibility:** The parties recommend that two levels should be deducted pursuant to Sentencing Guidelines Section 3E1.1(a) because the defendant has clearly demonstrated acceptance of responsibility.  If the deduction pursuant to Sentencing Guidelines Section 3E1.1(a) is applied, then the United States moves to deduct one additional level pursuant to Sentencing Guidelines Section 3E1.1(b)(2), because the defendant timely notified authorities of the intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

The parties agree that if the defendant does not abide by all of the agreements made within this document, the defendant's failure to comply is grounds for the loss of acceptance of responsibility pursuant to Sentencing Guidelines Section 3E1.1.  The parties further agree that the defendant's eligibility for a reduction pursuant to Sentencing Guidelines Section 3E1.1 is based upon the information known at the present time and that any actions of the defendant which occur or which become known to the United States subsequent to this agreement and are inconsistent with the defendant's acceptance of responsibility including, but not limited to criminal conduct, are grounds for the loss of acceptance of responsibility pursuant to Sentencing Guidelines Section 3E1.1.  In any event, the parties agree that all of the remaining provisions of this agreement remain valid and in full force and effect.

   **ii**. **Other Adjustments:** The parties agree that no additional adjustments apply.

   **C.** **Estimated Total Offense Level:** The parties agree that the Total Offense Level will depend on the Base Offense Level determined pursuant to Section 2K2.1(a), along with other relevant factors stated above, unless the defendant is an Armed Career Criminal. Depending on the underlying offense and the defendant's criminal history, the defendant could be an Armed Career Criminal pursuant to Title 18, United States Code, Section 924(e) and Section 4B1.4.  If the Court finds the defendant is an Armed Career Criminal, the Total Offense Level may be higher and the Criminal History Category may be as high as Category VI.  The defendant has discussed these possibilities with defense counsel.  Both parties reserve the right to argue that the defendant is or is not an Armed Career Criminal.

   **D.** **Criminal History:** The determination of the defendant's Criminal History

Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

**E.** **Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

## COUNTS THREE AND SIX

## POSSESSION WITH INTENT TO DISTRIBUTE

### A. Chapter 2 Offense Conduct:

**i.** **Base Offense Level:** The parties agree that the Base Offense Level for Counts Three and Six is 18, as found in Section 2D1.1(c)(11). The parties agree that the net weight of the quantity of the controlled substances for which the defendant is accountable, including relevant conduct, was approximately 1.76 grams of fentanyl, 20.94 grams of methamphetamine, 2.57 grams of psilocybin, and 2.88 grams of a mixture of heroin and fentanyl, which converts to at least at least 40 kilograms but less than 60 kilograms of converted drug weight, resulting in the base offense level.

**ii.** **Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply: Under Section 2D1.1(b)(1), **two (2)** levels shall be added because the defendant possessed a firearm.

**B.**     **Chapter 3 Adjustments:**

**i.**     **Acceptance of Responsibility:** The parties recommend that two levels should be deducted pursuant to Sentencing Guidelines Section 3E1.1(a) because the defendant has clearly demonstrated acceptance of responsibility.  If the deduction pursuant to Sentencing Guidelines Section 3E1.1(a) is applied, then the United States moves to deduct one additional level pursuant to Sentencing Guidelines Section 3E1.1(b)(2), because the defendant timely notified authorities of the intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

The parties agree that if the defendant does not abide by all of the agreements made within this document, the defendant's failure to comply is grounds for the loss of acceptance of responsibility pursuant to Sentencing Guidelines Section 3E1.1.  The parties further agree that the defendant's eligibility for a reduction pursuant to Sentencing Guidelines Section 3E1.1 is based upon the information known at the present time and that any actions of the defendant which occur or which become known to the United States subsequent to this agreement and are inconsistent with the defendant's acceptance of responsibility including, but not limited to criminal conduct, are grounds for the loss of acceptance of responsibility pursuant to Sentencing Guidelines Section 3E1.1.  In any event, the parties agree that all of the remaining provisions of this agreement remain valid and in full force and effect.

**ii.**     **Other Adjustments:** The parties agree that no additional adjustments apply.

**C.**     **Estimated Total Offense Level:** The parties agree that the Total Offense Level is 17, unless the defendant is a Career Offender. Depending on the underlying offense and the

defendant's criminal history, the defendant could be a Career Offender pursuant to Section 4B1.1. If the Court finds the defendant is a Career Offender, the Total Offense Level may be higher and the Criminal History Category may be as high as Category VI.  The defendant has discussed these possibilities with defense counsel.  Both parties reserve the right to argue that the defendant is or is not a Career Offender.

> **D.**     **Criminal History:**    The determination of the defendant's Criminal History Category shall be left to the Court.  Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category.  The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

> **E.**     **Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein.  The parties may not have foreseen all applicable Guidelines.  The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

**7.**    **WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

> **A.**    **Appeal:**    The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

>> **i.**     **Non-Sentencing Issues:**    The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea, the constitutionality of the statute(s) to which defendant is

pleading guilty, and whether the defendant's conduct falls within the scope of the statue(s).

      **ii.**    **Sentencing Issues:**  In light of the Government's agreement to move for the dismissal of Counts Three and Seven, which would carry a minimum term of sixty (60) months' imprisonment consecutive to any other count, at the time of sentencing, in the event the Court accepts the plea and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only as it affects the Base Offense Level or Criminal History Category.  Similarly, the United States hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea and sentences the defendant within or above the determined Sentencing Guidelines range.

    **B.**    **Habeas Corpus:**  The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

    **C.**    **Right to Records:**  The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

8.    **OTHER:**

    **A.**    **Disclosures Required by the United States Probation Office:**  The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the United States.

    **B.**    **Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:**  Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

    **C.**    **Supervised Release:**  Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime the defendant committed.  These conditions will be restrictions on the defendant to which the defendant will be required to adhere.  Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release.  The defendant understands that parole has been abolished.

    **D.**    **Mandatory Special Assessment:**  Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $400, which the defendant agrees to pay at the time of sentencing.  Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

    **E.**    **Possibility of Detention:**  The defendant may be subject to immediate detention

pursuant to the provisions of Title 18, United States Code, Section 3143.

      **F.**    **Fines and Costs of Incarceration and Supervision:**  The Court may impose a fine, costs of incarceration, and costs of supervision.  The defendant agrees that any fine imposed by the Court will be due and payable immediately.

      **G.**    **Forfeiture:**  The defendant agrees to forfeit all of the defendant's interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States.  The defendant admits that all United States currency, weapons, property, and assets seized by law enforcement officials during their investigation constitute the proceeds of the defendant's illegal activity, were commingled with illegal proceeds, or were used to facilitate the illegal activity.  The defendant agrees to execute any documents and take all steps needed to transfer title or ownership of said items to the United States and to rebut the claims of nominees and/or alleged third party owners.  The defendant further agrees that said items may be disposed of by law enforcement officials in any manner.

**9.**    **ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:**

      In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the United States to prove the elements of the offenses charged against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine

adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the United States' evidence and discussed the United States' case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the United States' case and any defenses.

The guilty plea could impact the defendant's immigration status or result in deportation. In particular, if any crime to which the defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

**10.     VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:**

This document constitutes the entire agreement between the defendant and the United States, and no other promises or inducements have been made, directly or indirectly, by any agent

of the United States, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11.    **CONSEQUENCES OF POST-PLEA MISCONDUCT:**

After pleading guilty and before sentencing, if the defendant commits any crime, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The United States may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

12.    **NO RIGHT TO WITHDRAW GUILTY PLEA:**

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant

understands that there will be no right to withdraw the plea entered under this agreement, except

where the Court rejects those portions of the plea agreement which deal with charges the United

States agrees to dismiss or not to bring.

_____
Date

CATHERINE M. HOAG
Assistant United States Attorney

_____
Date

MAKENZIE WILLARD
Defendant

_____
Date

TERENCE NIEHOFF
DEREK CORTEZ
Attorney for Defendant